UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOLID OAK SKETCHES, LLC, a Delaware limited liability company,<br><br>Plaintiff/Counter-Defendant,<br>v.<br><br>2K GAMES, INC, a Delaware corporation, and TAKE-TWO INTERACTIVE SOFTWARE, INC, a Delaware corporation,<br><br>Defendants/Counterclaimants. | CASE NO. 16-CV-00724<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

**SECOND AMENDED COMPLAINT**

Plaintiff, SOLID OAK SKETCHES, LLC ("S. OAK"), by and through undersigned counsel, hereby sues Defendants, 2K GAMES, INC, ("2K") and TAKE-TWO INTERACTIVE SOFTWARE, INC, ("TAKE-TWO"), and, in support thereof, state as follows:

**NATURE OF ACTION, JURISDICTION, AND VENUE**

1. This is a civil action alleging copyright infringement.

2. Plaintiff seeks preliminary and permanent injunctive relief in addition to appropriate damages from the Court.

3. This action is proper under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act"). The Court has original subject matter jurisdiction pursuant to 17 U.S.C. §§ 101 *et seq.* and 28 U.S.C. §§ 1331 and 1338(a).

4. The Court has personal jurisdiction as the principal place of business of TAKE-TWO is in the Southern District of New York. The other defendant is properly joined under Fed. R. Civ. P 20(a)(2).

5.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b), as a substantial part of the events that gave rise to this Complaint, including the negotiations between the parties and the development and marketing of the infringing property, occurred in New York. In the alternative, venue is proper under 28 U.S.C. § 1391(c), as TAKE-TWO is subject to the personal jurisdiction of the Southern District of New York.

## PARTIES

6.      Plaintiff, S. OAK is a Delaware limited liability company with a principal address located at 1521 Concord Pike, Ste 301, Wilmington, DE 19803.

7.      Defendant, 2K is a Delaware corporation with a principal address located at 10 Hamilton Landing, Novato, CA 94949. The registered office address is located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

8.      Defendant, TAKE-TWO is a Delaware corporation with a principal address located at 622 Broadway, New York, NY 10012. The registered office address is located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

## SUBSTANTIVE ALLEGATIONS

## BACKGROUND ON 2K GAMES, INC.

9.  On or about October 1, 2013, 2K released its annual basketball video game titled NBA 2K14. The video game included the reproduction of several tattoo designs that are the copyrighted intellectual property of the Plaintiff.

10. On or about October 7, 2014, 2K released its annual basketball video game titled NBA 2K15. The video game included the reproduction of several tattoo designs that are the copyrighted intellectual property of the Plaintiff.

11. On or about September 29, 2015, 2K released its annual basketball video game titled NBA 2K16. The video game included the reproduction of several tattoo designs that are the copyrighted intellectual property of the Plaintiff.

12. On October 2, 2015, 2K announced that it had shipped more than four million copies of NBA 2K16 within its first week of sales.[1] 2K also announced that the sales of digital downloads had more than doubled from the prior year's iteration of the basketball video game.[2]

13. The "monstrous" first week sales of NBA 2K16 were accredited to the crisp details and real graphics, which combined with the authentic gameplay resulted in "the most complete basketball game that 2K ever delivered."[3]

14. NBA 2K16 was stated as having "the best launch month ever for any Sports game on the 8th [generation of video game consoles]"[4]

---

[1] "NBA 2K16 Sales Figures Revealed," IGN.com, Oct. 2, 2015, available at http://www.ign.com/articles/2015/10/02/nba-2k16-sales-figures-revealed.
[2] "NBA 2K16 Breaks Records With 4 Million Copies Shipped in Under One Week," GameSpot.com, Oct. 2, 2015, available at http://www.gamespot.com/articles/nba-2k16-breaks-records-with-4-million-copies-ship/1100-6431093/.
[3] "NBA 2K16 First-Week Record Sales Numbers Released," TechTimes.com, Oct. 2, 2015, available at http://www.techtimes.com/articles/90935/20151002/nba-2k16-first-week-sales-numbers-released.htm.
[4] "September 2015 NPD Sales Analysis: NBA2K16 has the best launch for a sports game on 8th gen," GearNuke.com, Oct. 20, 2015, available at http://gearnuke.com/september-2015-npd-sales-analysis-nba2k16-best-launch-sports-game-8th-gen/#.

15. On social media, 2K has promoted the improved tattoo customization as a major feature in the game.[5]

16. Game reviewers praised NBA 2K16's improved visuals, which included smoother looking character models and more individualized tattoos.[6]

### BACKGROUND ON TAKE-TWO INTERACTIVE SOFTWARE, INC.

17. TAKE-TWO is a major developer, publisher, and marketer of interactive entertainment and video games around the globe.[7]

18. TAKE-TWO develops and publishes products through 2K and Rockstar Games, two wholly owned labels.[8]

19. For the second financial quarter in 2015, the quarter in which 2K released NBA 2K16, TAKE-TWO's revenue rose to $364.9 million, a 169 percent increase over the same quarter of the previous year.[9]

### SOLID OAK SKETCHES' NEGOTIATIONS WITH DEFENDANTS

20. On July 8, 2015, Plaintiff sent a letter to Daniel Emerson, Executive Vice President and General Counsel of TAKE-TWO, to discuss the infringing use of copyrighted tattoo designs in the NBA2K video games. *See Exhibit A*. Reference was specifically made to versions of the game dating back to the NBA 2K14 video game.

21. On July 28, 2015, Plaintiff continued discussions regarding the infringing properties with Peter Welch, Senior Counsel 2K and Senior Vice-President and Associate

---

[5] "NBA 2K16: Breaking Down Best New Features for This Year's Game," BleacherReport.com, Aug. 31, 2015, available at http://bleacherreport.com/articles/2558410-nba-2k16-breaking-down-best-new-features-for-this-years-game.
[6] *Id. See also* "NBA 2K16 Review: Stellar, but similar," Examiner.com, Sept. 25, 2015, available at http://www.examiner.com/review/nba-2k16-review-stellar-but-similar.
[7] "Corporate Profile: About Take-Two Interactive Software," Take2Games.com, Jan. 12, 2016, available at http://ir.take2games.com/phoenix.zhtml?c=86428&p=irol-irhome.
[8] *Id*.
[9] "Take-Two revenues leap as NBA 2K16 soars," Gamasutra.com, Nov. 5, 2015, available at http://www.gamasutra.com/view/news/258619/TakeTwo_revenues_leap_as_NBA_2K16_soars.php.

General Counsel TAKE-TWO. *See Exhibit B*. Again, Plaintiff's counsel identified that the tattoos at issue were visible on versions of the game dating back to the NBA 2K14 video game.

22. After various requests for documentation, the Defendants ultimately terminated negotiations and continued with the production of their intentionally infringing basketball video games.

## THE TATTOO DESIGNS ARE PROPER SUBJECTS FOR COPYRIGHT PROTECTION

23. Federal copyright protection, as defined by 17 U.S.C. §102(a), is available for "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."

24. This statutory requirement has been distilled into two required elements: (1) originality and (2) fixation.

25. The Supreme Court has set a low bar for originality. In *Feist Publications, Inc. v. Rural Tel. Serv. Co.* the Court stated that "[o]riginal, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." 499 U.S. 340, 345 (1991). The Court went on to state that the "vast majority of works make the grade quite easily, as they possess some creative spark." *Id.*

26. The copyrighted tattoo designs easily satisfy this standard for originality. The various designs were independently created by various authors (Shawn Rome, Justin Wright, and Tommy Ray Cornett) who have subsequently signed Copyright License Agreements with Solid Oak Sketches L.L.C. *See Exhibits C, G,* and *I; see also Paragraphs 33-38, infra.* The stylization

and artistic nature of the designs is certainly sufficient to satisfy the "minimal degree of creativity" requirement. *Feist Publications, Inc.*, 499 U.S. at 345.

27. The copyrighted tattoo designs also satisfy the fixation requirement. The definitions section of the Copyright Act provides that "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. §101. The copyrighted tattoo designs are imprinted permanently upon the skin of humans, clearly stable and able to be perceived for much more than a transitory duration.

28. Additionally, to be copyrightable, a subject must qualify as a "work" under the Copyright Act. 17 U.S.C. §102(a) lists eight works-of-authorship categories. Of those eight categories, tattoos are protected as copyrightable under the fifth, which covers "pictorial, graphic, and sculptural works." 17 U.S.C. §102(a)(5).

29. The definitions section of the Copyright Act provides that "pictorial, graphic, and sculptural work" includes "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." 17 U.S.C. §101.

30. The copyrighted tattoo designs fit squarely within this statutory definition of "pictorial, graphic, and sculptural works." 17 U.S.C. §102(a)(5). Many legal authorities on copyright have offered support for this position. *See, e.g.* Yolanda M. King, *The Challenges "Facing" Copyright Protection for Tattoos*, 92 Or. L. Rev. 129 (2013); *see also* Warner Bros.' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, Declaration of David Nimmer, ¶ 18, *Whitmill*, No. 4:11-CV-752.

31. The issue of tattoo copyrightability has yet to be decided upon in court due to numerous settlements preventing a final judicial opinion. *See, e.g., Whitmill v. Warner Bros. and Escobedo v. THQ, Inc.* However, when presiding over the preliminary injunction phase of the *S. Victor Whitmill v. Warner Bros.* case, Judge Catherine D. Perry provided the greatest clarity thus far on the issue when she stated, "Of course tattoos can be copyrighted. I don't think there is any reasonable dispute about that . . . . [T]he tattoo itself and the design itself can be copyrighted, and I think it's entirely consistent with the copyright law." Noam Cohen, *Citing Public Interest, Judge Rules for 'Hangover II'*, THE NEW YORK TIMES (May 24 2011, 4:05pm), http://mediadecoder.blogs.nytimes.com/2011/05/24/citing-public-interest-judge-rules-for-hangover-ii/.

### THE TATTOOS ARE THE PROTECTED AND COPYRIGHTED INTELLECTUAL PROPERTY OF SOLID OAK SKETCHES, LLC

32. S. OAK entered into a Copyright License Agreement with Shawn Rome, the Licensor of the agreement, in regards to several of Rome's works. *See Exhibit C.* The Work titled "330 and Flames Tattoo Artwork" was issued a Certificate of Registration by the United States Register of Copyrights on June 08, 2015. *See Exhibit D.* The Registration Number is VA 1-969-863, with Rights and Permissions being granted to Chosen1, LLC (the former name of the Plaintiff S. OAK). *See Exhibit D.*

33. Another work of Rome included under the Copyright License Agreement was issued a Certificate of Registration by the United States Register of Copyrights on July 24, 2015. *See Exhibit E*. This Work was titled "Script with a scroll, clouds, and doves." *See Exhibit E*. The Registration Number is VA 1-971-878, with Rights and Permissions being granted to Chosen1, LLC. *See Exhibit F*.

34. S. OAK entered into a Copyright License Agreement with Justin Wright, the Licensor of the agreement, in regards to several of Wright's works. *See Exhibit F*. The Work titled "Child Portrait Tattoo Artwork" was issued a Certificate of Registration by the United States Register of Copyrights on June 08, 2015. *See Exhibit G*. The Registration Number is VA 1-971-672, with Rights and Permissions being granted to Chosen1, LLC. *See Exhibit G*.

35. S. OAK entered into a Copyright License Agreement with Tommy Ray Cornett, the Licensor of the agreements, in regards to several of Cornett's works. *See Exhibit H*. The Work titled "Basketball with Stars and Script" was issued a Certificate of Registration by the United States Register of Copyrights on July 24, 2015. *See Exhibit J*. The Registration Number is VA 1-971-877, with Rights and Permissions being granted to Chosen1, LLC. *See Exhibit I*.

36. United States Register of Copyrights issued a Certificate of Registration on July 24, 2015 for another of Tommy Ray Cornett's works included under this Copyright License Agreement. *See Exhibit J*. This Work was titled "Wizard." *See Exhibit J*. The Registration Number is VA 1-971-876, with Rights and Permissions being granted to Chosen1, LLC. *See Exhibit K*.

## COUNT I: COPYRIGHT INFRINGEMENT, 17 U.S.C. §§ 106(5) AND 501)

37. Plaintiff hereby re-alleges the allegations contained in the above paragraphs as if fully set forth herein and state as follows:

38. This is a count of Copyright Infringement against Defendants 2K and TAKE-TWO.

39. Through their conduct averred in the previous paragraphs, Defendants have infringed Plaintiff's copyrights in their works by publicly displaying the Plaintiff's copyrighted works without authorization and in violation of 17 U.S.C. §§106(5) and 501.

40. Each infringement by Defendants of Plaintiff's protected copyrighted works creates an independent act of infringement.

41. Defendants' acts of infringement were made after a good faith attempt to negotiate licensing by the Plaintiff, and as such Defendants acted with willful disregard for the Plaintiff's rights. *See Exhibits A-B*.

42. Since the copyright infringement by the Defendants caused direct and proximate harm to the Plaintiff, the Plaintiff is entitled to damages in an amount to be determined at trial.

43. Since the copyright infringement by the Defendants began as early as with the NBA 2K14 video game and Plaintiff put Defendants on notice of its copyright infringement related to the NBA 2K14, NBA 2K15 and NBA 2K16 video games, Plaintiff is entitled to actual damages based on infringement concerning each of the aforementioned video games.

44. As a direct and proximate result of the Defendants' actions, the Plaintiff has sustained and will continue to sustain immediate, substantial, and irreparable injury, for which there is no adequate remedy at law. Based upon their history of refusal to respect the rights of the Plaintiff, unless this Court enjoins their actions, the Defendants will continue to infringe upon the

Plaintiff's valid intellectual property rights in the copyrighted tattoo designs. As such, the Plaintiff is entitled to preliminary and permanent injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

(a) Grant preliminary and permanent injunctive relief against Defendants' production of the video game NBA 2K17 and against any other public displays or activities that infringe upon the Plaintiff's copyrighted works.

(b) Grant judgment against Defendants and require the Defendants to pay forthwith to Plaintiff appropriate monetary damages, together with interest.

(c) Grant any and all such further relief, in law or equity, to which this Court deems the Plaintiff is entitled.

## JURY TRIAL DEMAND

The Plaintiff demands a trial by jury on all issues.

October 24 2016                                             Respectfully submitted.

**HEITNER LEGAL, P.L.L.C**
*Attorney for Plaintiff*
1736 NE 7th Street
Fort Lauderdale, FL 33304
Phone: 954-558-6999
Fax: 954-927-3333

By: _/s/ Darren A. Heitner_
DARREN A. HEITNER
Florida Bar No.: 85956
Darren@heitnerlegal.com

## CERTIFICATION PURSUANT TO F.R.C.P. 15

I HEREBY CERTIFY that opposing counsel consents to the undersigned counsel's filing of the foregoing Second Amended Complaint.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of October, 2016, I electronically filed the foregoing document using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

By: /s/ Darren A. Heitner
DARREN A. HEITNER
Florida Bar No.: 85956
Darren@heitnerlegal.com

## SERVICE LIST

Dale M. Cendali
Joshua L. Simmons
Emma Raviv

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

dale.cendali@kirkland.com
joshua.simmons@kirkland.com
emma.raviv@kirkland.com