# **EXHIBIT F**

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## VA 1-971-878

**Effective Date of Registration:**
July 24, 2015

---

## Title
_____

Title of Work: Script with a scroll, clouds, and doves

## Completion/Publication
_____

Year of Completion: 2001
Date of 1st Publication: December 15, 2001
Nation of 1st Publication: United States

## Author
_____

- Author: Shawn Rome
Author Created: 2-D artwork
Work made for hire: No
Citizen of: United States

## Copyright Claimant
_____

Copyright Claimant: Shawn Rome
14730 Perham Rd., Mereno Valley, CA 92553

## Rights and Permissions
_____

Organization Name: Chosen1, LLC
Email: siegler.matt@gmail.com
Telephone: (404)824-4343
Address: 1735 W. Diversey Pkwy.
#218
Chicago, IL 60614 United States

## Certification
_____

Name: Benjamin Gilford
Date: July 24, 2015
Applicant's Tracking Number: 155913.010100-F___

**Registration #:** VA0001971878
**Service Request #:** 1-2580753941



Greenberg Traurig, LLP
Benjamin Gilford
77 West Wacker Drive
Suite 3100
Chicago, IL 60601 United States

**EXHIBIT G**

# TATTOO ART EXCLUSIVE LICENSE AGREEMENT (ARTWORK)

This Copyright License Agreement (the "Agreement") is entered into as of April 20, 2012 (the "Effective Date") by and between Solid Oak Sketches L.L.C., a Delaware limited liability corporation which maintains an address at 1521 Concord Pike, 301, Wilmington, DE 19803 (the "Licensee"), and Justin Wright, an individual who maintains an address at 24525 Sprague Rd. Columbia Station, OH 44028 (the "Licensor," and together with Licensee, each a "Party" and collectively the "Parties").

## RECITALS

**WHEREAS,** Licensor has created and performed the artwork more particularly described as LeBron James' tattoos, including a child portrain on his inner-left forearm and lettering on this top of his hands;
(the "Artwork") [,a copy of which is attached as <u>Exhibit A</u> hereto and made a part hereof by reference]; and

**WHEREAS,** neither the Licensor nor Licensee (i) has registered or (ii) has applied for the registration of the Artwork before the U.S. Copyright Office;

**WHEREAS,** the Licensor has the exclusive right to license others to produce, copy, make, or sell the artwork

**WHEREAS,** the Licensee wants to obtain, and the Licensor has agreed to grant, an exclusive license authorizing the use of the Artwork by the Licensor subject to the terms and conditions of this Agreement; and

**WHEREAS,** each Party is duly authorized and capable of entering into this Agreement.

**NOW THEREFORE,** in consideration of the above recitals and the mutual promises and benefits contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## 1. GRANT OF LICENSE.

As of the Effective Date, the Licensor hereby grants to Licensee, and Licensee hereby accepts, an exclusive, worldwide, perpetual, irrevocable, and fully sublicensable right in and to the Artwork, in any and all media (including but not limited to electronic, broadcast, mobile, apparel, trading card(s), temporary tattoo, print, clothing, apparel, sticker, video, and any other technology now known or that may be developed in the future, but excluding the right to tattoo a permanent tattoo rendering onto a person's

skin), to store, use, reproduce, distribute, modify, adapt, publicly display, create derivative works, license and sublicense the Artwork for Licensee's benefit as an individual work or as part of a compilation.

Licensor further appoints Licensee as Licensor's exclusive agent for purposes of registering the Artwork before the United States Copyright Office ("USCO"), and agrees to provide any required information, execute any documents, including electronic communications, and perform any other acts reasonably requested by Licensee to register the Artwork before the USCO. If Licensor fails or refuses to execute and deliver to Licensee any such documents, Licensor hereby appoints Licensee as its irrevocable attorney-in-fact, with the right, but not the obligation, to do any and all acts and things necessary to execute, acknowledge and deliver such documents, in the name of and on behalf of Licensor, which appointment shall be deemed to be a power coupled with an interest and shall be irrevocable. The license shall be sublicensable, transferable, and exclusive to the Licensee.

If during the term of the Agreement Licensor creates subsequent artwork that is displayed as a tattoo upon an athlete playing in a professional league in the United States, that artwork shall be subsequently licensed by Licensee upon written notice to Licensor of intent to license as a New Artwork upon the same terms and conditions of this Agreement. Upon such notice, Licensor shall have fourteen (14) days to reject the terms of the license of the New Artwork.

## 2. FEES.

<u>Royalties</u>. The Licensee shall pay to the Licensor, an annual royalty of 8% (eight percent) of the Net Earnings of Licensee for any use of the Artwork sold by the Licensee or any of its subsidiaries, divisions, or affiliates. In the event the Artwork is used in a collective work that includes artwork contributions from multiple licensors who have also entered into licensing agreements with Licensee, Licensor shall receive a pro-rated royalty of 8%, shared amongst all licensors, and apportioned based on the pro rata revenue generated from such artwork(s) per licensor incorporated into the collective work. As used in this Agreement, "Net Earnings" shall mean Licensee's net earnings from sales of work utilizing the Artwork based on an item's billing price to customers or distributors, buyers including the royalty amount less:

    i.       Expenses, including agency and union fees if applicable;
    ii.      Trade discounts and marketing allowances actually given;
    iii.     Returns and Spoilage/Damages; and
    iv.     Transportation charges on returns.

Royalties shall be reported and paid annually. The royalty report deadline is thirty (30) days following the end of each calendar year.

## 3. OWNERSHIP AND USE OF ARTWORK.

<u>Ownership of Artwork</u>. The Licensee hereby acknowledges that the Licensor is the owner of the Artwork and of any associated federal copyright registrations and pending or future registrations, and that nothing in this Agreement shall give the Licensee any right, title, or interest in the Artwork other than the right to use the same in accordance with this Agreement. Notwithstanding the foregoing, the Licensor acknowledges that any and all rights that might be acquired by the Licensee because of its use of the Artwork, including copyright in derivative works, shall inure to the benefit of the Licensee.

## 4. REPRESENTATIONS AND WARRANTIES.

(a) The Parties each represent and warrant as follows:

A. Each Party has full power, authority, and right to perform its obligations under the Agreement; and

B. Entering into this Agreement will not violate the charter or bylaws of either Party or any Artwork contract to which that Party is also a party.

(b) The Licensor hereby represents and warrants as follows:

A. It is the sole owner of all right, title, and interest in and to the Artwork;

B. It has the sole and exclusive right to grant permission for use of the Artwork as specified in this Agreement;

C. the Artwork is original or Licensor has obtained the necessary valid and binding permissions from all required parties and that Licensor will keep the original release and will provide a copy to Licensee if requested;

D. It has not assigned, transferred, exclusively licensed, pledged, or otherwise encumbered the Artwork or agreed to do so;

E. It is not aware of any violation, infringement, or misappropriation of any third party's rights or any claims of rights (including existing intellectual property rights, rights of privacy, publicity, or any other rights) by the Artwork; and

F. It is not aware of any third-party consents, assignments, releases, or licenses that are necessary to perform under this Agreement that have not already been obtained.

## 5. INDEMNIFICATION.

The Licensor will indemnify the Licensee against and hold it harmless from any claim, litigation, arbitration, judgments, awards, attorneys' fees, liabilities, settlements, damages, losses, and expenses relating to or arising from:

(a) an allegation that the Artwork or its use or reproduction infringes or misappropriates any copyright or other intellectual property;

(b) an allegation that this Agreement conflicts with, violates, or breaches any contract, assignment, license, sublicense, security interest, encumbrance, or other obligation to which the Licensor is a party; or

(c) any past, present, or future use, licensing, sublicensing, distribution, marketing, disclosure, or commercialization of the Artwork by the Licensor.

## 6. TERMINATION.

(a) <u>Termination Procedures</u> The Agreement will terminate under the following conditions:

(1) Licensee may terminate this Agreement at any time by providing Licensor with at least thirty (30) days' prior written notice;

(2) Licensor may terminate this Agreement upon written notice if Licensee has not sold any uses of the Artwork or entered into any licensing agreement with a third party for use of the Artwork within five (5) years of the Effective Date;

(3) Either Party may terminate the Agreement upon notice to the other Party if the other Party is in material breach of the Agreement, where the non-breaching Party provides the breaching Party notice of the breach within fourteen (14) days of knowledge of the breach, and such breach has not been cured within sixty (60) days after notice of such breach is delivered;

Either Party may terminate this Agreement at any time upon notice to the other Party if any of the following events occurs (each such event, an "Insolvency Event"): (i) the filing by the other Party of any petition in bankruptcy or for reorganization, debt consolidation, adjustment of debt, relief of debtors, dissolution, insolvency or liquidation under bankruptcy laws or under any comparable law with respect to such Party and such petition or proceeding is not dismissed within sixty (60) days after its commencement, (ii) the appointment of a custodian (as defined under bankruptcy laws) over all or substantially of the property of the other Party, (iii) the adjudication that the other Party is insolvent or bankrupt, (iv) the other Party's making of an assignment of its assets for the benefit of creditors, or the application of the other Party for the appointment of a receiver or a trustee of its assets or (v) the failure of the other Party to pay its debts in the ordinary course as they become due

## 7. SUCCESSORS AND ASSIGNS.

This Agreement shall be binding upon and inure to the benefit of the parties and their successors and assigns.

## 8. NO IMPLIED WAIVER.

The failure or delay of either party to exercise any right, power or privilege under this Agreement or the failure to strictly enforce any breach or default, shall not constitute a waiver with respect to it. No waiver shall be deemed to have been made unless expressed in writing and signed by the party against whom the waiver is to be charged.

## 9. NO AGENCY RELATIONSHIP.

This Agreement creates a licensor-licensee relationship between the Parties. Nothing in this Agreement shall be construed to establish a joint venture, agency, or partnership relationship between the Parties.

## 10. GOVERNING LAW.

This Agreement shall be governed by the laws of the state of Illinois. The parties agree that any civil action or proceeding to enforce any term(s) of this Agreement may be filed either in the federal or state courts in Chicago, Illinois and the parties consent to the jurisdictions of those courts.

## 11. COUNTERPARTS/ELECTRONIC SIGNATURES.

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument. In

making proof of this Agreement it shall not be necessary to produce or account for more than one counterpart.

### 12. SEVERABILITY.

In the event that any portion, word, clause, phrase, sentence or paragraph of this Agreement is declared void or unenforceable, such portion shall be considered independent and severable from the remainder hereof, the validity of which shall remain unaffected.

### 13. ENTIRE AGREEMENT.

This Agreement constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes any and all prior and contemporaneous agreements or understandings relating to the subject matter of this Agreement. This Agreement may not be amended or modified except by an agreement in writing signed by both Parties.

### 14. HEADINGS.

Headings used in this Agreement are provided for convenience only and shall not be used to construe meaning or intent.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the Effective Date.

**LICENSOR**

By: _____

Name: Justin Wright

**LICENSEE**                    Solid Oak Sketches, LLC

By: _____

Name: Matthew Siegler

Title: Founder

**EXHIBIT H**

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## VA 1-971-672

**Effective Date of Registration:**
June 08, 2015

## Title

Title of Work: Child Portrait Tattoo Artwork

## Completion/Publication

Year of Completion: 2006
Date of 1st Publication: May 01, 2006
Nation of 1st Publication: United States

## Author

- Author: Justin Wright
  Author Created: 2-D artwork
  Citizen of: United States

## Copyright Claimant

Copyright Claimant: Justin Wright
24525 Sprague Rd., Columbia Station, OH 44028

## Rights and Permissions

Organization Name: Chosen1, LLC
Email: siegler.matt@gmail.com
Telephone: (404)824-4343
Address: 1735 W. Diversey Pkwy.
#218
Chicago, IL 60614 United States

## Certification

Name: Benjamin Gilford
Date: June 08, 2015
Applicant's Tracking Number: 155913.010100-F___

**Registration #:** VA0001971672
**Service Request #:** 1-2434997252



Greenberg Traurig, LLP
Benjamin Gilford
77 West Wacker Drive
Suite 3100
Chicago, IL 60601 United States

# EXHIBIT I

# TATTOO ART EXCLUSIVE LICENSE AGREEMENT (ARTWORK)

This Copyright License Agreement (the "Agreement") is entered into as of August 10, 2012 (the "Effective Date") by and between Solid Oak Sketches L.L.C., a Delaware limited liability corporation which (the "Licensee"), and Tommy Ray Cornett (the "Licensor," and together with Licensee, each a "Party" and collectively the "Parties").

## RECITALS

**WHEREAS,** Licensor has created and performed the artwork more particularly described as follows: Deandre Liggins, Demarcus Cousins, Eric Bledsoe, and Kenyon Martin tattoos (the "Artwork") [,a copy of which is attached as <u>Exhibit A</u> hereto and made a part hereof by reference]; and

**WHEREAS,** neither the Licensor nor Licensee (i) has registered or (ii) has applied for the registration of the Artwork before the U.S. Copyright Office;

**WHEREAS,** the Licensor has the exclusive right to license others to produce, copy, make, or sell the artwork

**WHEREAS,** the Licensee wants to obtain, and the Licensor has agreed to grant, an exclusive license authorizing the use of the Artwork by the Licensor subject to the terms and conditions of this Agreement; and

**WHEREAS,** each Party is duly authorized and capable of entering into this Agreement. and

**WHEREAS** this agreement is only valid so long as the professional athletes whose tattoos are represented authorize their right of publicity to be used by any party attempting to gain any form of monies from said tattoos,

**NOW THEREFORE,** in consideration of the above recitals and the mutual promises and benefits contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## 1. GRANT OF LICENSE.

As of the Effective Date, the Licensor hereby grants to Licensee, and Licensee hereby accepts, an exclusive, worldwide, perpetual, irrevocable, and fully sublicensable right in and to the Artwork, in any and all media (including but not limited to electronic, broadcast, mobile, apparel, trading card(s), temporary tattoo, print, clothing, apparel, sticker, video, and any other technology now known or that may be developed in the future, but excluding the right to tattoo a permanent tattoo rendering onto a person's skin), to store, use, reproduce, distribute, modify, adapt, publicly display, create

derivative works, license and sublicense the Artwork for Licensee's benefit as an individual work or as part of a compilation.

Licensor further appoints Licensee as Licensor's exclusive agent for purposes of registering the Artwork before the United States Copyright Office ("USCO"), and agrees to provide any required information, execute any documents, including electronic communications, and perform any other acts reasonably requested by Licensee to register the Artwork before the USCO. If Licensor fails or refuses to execute and deliver to Licensee any such documents, Licensor hereby appoints Licensee as its irrevocable attorney-in-fact, with the right, but not the obligation, to do any and all acts and things necessary to execute, acknowledge and deliver such documents, in the name of and on behalf of Licensor, which appointment shall be deemed to be a power coupled with an interest and shall be irrevocable. The license shall be sublicensable, transferable, and exclusive to the Licensee.

If during the term of the Agreement Licensor creates subsequent artwork that is displayed as a tattoo upon an athlete playing in a professional league in the United States, that artwork shall be subsequently licensed by Licensee upon written notice to Licensor of intent to license as a New Artwork upon the same terms and conditions of this Agreement. Upon such notice, Licensor shall have fourteen (14) days to reject the terms of the license of the New Artwork.

## 2. FEES.

Royalties. The Licensee shall pay to the Licensor, an annual royalty of 8% (eight percent) of the Net Earnings of Licensee for any use of the Artwork sold by the Licensee or any of its subsidiaries, divisions, or affiliates. In the event the Artwork is used in a collective work that includes artwork contributions from multiple licensors who have also entered into licensing agreements with Licensee, Licensor shall receive a pro-rated royalty of 8%, shared amongst all licensors, and apportioned based on the pro rata revenue generated from such artwork(s) per licensor incorporated into the collective work. As used in this Agreement, "Net Earnings" shall mean Licensee's net earnings from sales of work utilizing the Artwork based on an item's billing price to customers or distributors, buyers including the royalty amount less:

  i.  Expenses, including agency and union fees if applicable;
  ii.  Trade discounts and marketing allowances actually given;
  iii.  Returns and Spoilage/Damages; and
  iv.  Transportation charges on returns.

Royalties shall be reported and paid annually. The royalty report deadline is thirty (30) days following the end of each calendar year.

## 3. OWNERSHIP AND USE OF ARTWORK.

Ownership of Artwork. The Licensee hereby acknowledges that the Licensor is the owner of the Artwork and of any associated federal copyright registrations and pending or future registrations, and that nothing in this Agreement shall give the Licensee any right, title, or interest in the Artwork other than the right to use the same in accordance with this Agreement._Notwithstanding the foregoing, the Licensor acknowledges that any and all rights that might be acquired by the Licensee because of its use of the Artwork, including copyright in derivative works, shall inure to the benefit of the Licensee.

## 4. REPRESENTATIONS AND WARRANTIES.

(a)    The Parties each represent and warrant as follows:

A. Each Party has full power, authority, and right to perform its obligations under the Agreement; and

B. Entering into this Agreement will not violate the charter or bylaws of either Party or any Artwork contract to which that Party is also a party.

(b)    The Licensor hereby represents and warrants as follows:

A. It is the sole owner of all right, title, and interest in and to the Artwork;

B. It has the sole and exclusive right to grant permission for use of the Artwork as specified in this Agreement;

C. the Artwork is original or Licensor has obtained the necessary valid and binding permissions from all required parties and that Licensor will keep the original release and will provide a copy to Licensee if requested;

D. It has not assigned, transferred, exclusively licensed, pledged, or otherwise encumbered the Artwork or agreed to do so;

E. It is not aware of any violation, infringement, or misappropriation of any third party's rights or any claims of rights (including existing

intellectual property rights, rights of privacy, publicity, or any other rights) by the Artwork; and

   F. It is not aware of any third-party consents, assignments, releases, or licenses that are necessary to perform under this Agreement that have not already been obtained.

## 5. INDEMNIFICATION.

The Licensor will indemnify the Licensee against and hold it harmless from any claim, litigation, arbitration, judgments, awards, attorneys' fees, liabilities, settlements, damages, losses, and expenses relating to or arising from:

   (a) an allegation that the Artwork or its use or reproduction infringes or misappropriates any copyright or other intellectual property;

   (b) an allegation that this Agreement conflicts with, violates, or breaches any contract, assignment, license, sublicense, security interest, encumbrance, or other obligation to which the Licensor is a party; or

   (c) any past, present, or future use, licensing, sublicensing, distribution, marketing, disclosure, or commercialization of the Artwork by the Licensor.

## 6. TERMINATION.

(a) <u>Termination Procedures</u> The Agreement will terminate under the following conditions:

   (1) Licensee may terminate this Agreement at any time by providing Licensor with at least thirty (30) days' prior written notice;

   (2) Licensor may terminate this Agreement upon written notice if Licensee has not sold any uses of the Artwork or entered into any licensing agreement with a third party for use of the Artwork within five (5) years of the Effective Date;

   (3) Either Party may terminate the Agreement upon notice to the other Party if the other Party is in material breach of the Agreement, where the non-breaching Party provides the breaching Party notice of the breach within fourteen (14) days of knowledge of the breach, and such breach has not been cured within sixty (60) days after notice of such breach is delivered;

Either Party may terminate this Agreement at any time upon notice to the other Party if any of the following events occurs (each such event, an "Insolvency Event"): (i) the filing by the other Party of any petition in bankruptcy or for reorganization, debt consolidation,

adjustment of debt, relief of debtors, dissolution, insolvency or liquidation under bankruptcy laws or under any comparable law with respect to such Party and such petition or proceeding is not dismissed within sixty (60) days after its commencement, (ii) the appointment of a custodian (as defined under bankruptcy laws) over all or substantially of the property of the other Party, (iii) the adjudication that the other Party is insolvent or bankrupt, (iv) the other Party's making of an assignment of its assets for the benefit of creditors, or the application of the other Party for the appointment of a receiver or a trustee of its assets or (v) the failure of the other Party to pay its debts in the ordinary course as they become due

## 7.  SUCCESSORS AND ASSIGNS.

This Agreement shall be binding upon and inure to the benefit of the parties and their successors and assigns.

## 8.  NO IMPLIED WAIVER.

The failure or delay of either party to exercise any right, power or privilege under this Agreement or the failure to strictly enforce any breach or default, shall not constitute a waiver with respect to it.  No waiver shall be deemed to have been made unless expressed in writing and signed by the party against whom the waiver is to be charged.

## 9.  NO AGENCY RELATIONSHIP.

This Agreement creates a licensor-licensee relationship between the Parties. Nothing in this Agreement shall be construed to establish a joint venture, agency, or partnership relationship between the Parties.

## 10. GOVERNING LAW.

This Agreement shall be governed by the laws of the state of Illinois.  The parties agree that any civil action or proceeding to enforce any term(s) of this Agreement may be filed either in the federal or state courts in Chicago, Illinois and the parties consent to the jurisdictions of those courts.

## 11. COUNTERPARTS/ELECTRONIC SIGNATURES.

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument. In making proof of this Agreement it shall not be necessary to produce or account for more than one counterpart.

## 12. SEVERABILITY.

In the event that any portion, word, clause, phrase, sentence or paragraph of this Agreement is declared void or unenforceable, such portion shall be considered independent and severable from the remainder hereof, the validity of which shall remain unaffected.

## 13. ENTIRE AGREEMENT.

This Agreement constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes any and all prior and contemporaneous agreements or understandings relating to the subject matter of this Agreement. This Agreement may not be amended or modified except by an agreement in writing signed by both Parties.

## 14. HEADINGS.

Headings used in this Agreement are provided for convenience only and shall not be used to construe meaning or intent.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the Effective Date. 10·16·1C

LICENSOR        [LICENSOR NAME]

THOMAS RAY GARNETT

By:
Name:
Title:

LICENSEE        Solid Oak Sketches, LLC

By:
Name: Matt Siegler
Title:

*Copyright License Agreement
(Artwork)*
CI187139.2
66666-55555

**EXHIBIT J**

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## VA 1-971-877

**Effective Date of Registration:**
July 24, 2015

## Title _____

**Title of Work:** Basketball with Stars and Script

## Completion/Publication _____

**Year of Completion:** 2005
**Date of 1st Publication:** April 01, 2005
**Nation of 1st Publication:** United States

## Author _____

· **Author:** Tommy Ray Cornett
**Author Created:** 2-D artwork
**Work made for hire:** No
**Citizen of:** United States

## Copyright Claimant _____

**Copyright Claimant:** Tommy Ray Cornett
527 S Upper St, Lexington, KY 40508

## Limitation of copyright claim _____

**Material excluded from this claim:** Prior 2-D artwork and text

**New material included in claim:** 2-D artwork

## Rights and Permissions _____

**Organization Name:** Chosen1, LLC
**Email:** siegler.matt@gmail.com
**Telephone:** (404)824-4343
**Address:** 1735 W. Diversey Pkwy.
#218
Chicago, IL 60614 United States

## Certification _____

**Name:** Benjamin Gilford

**Registration #:** VA0001971877
**Service Request #:** 1-2580754257



OCT 06 2015

By_____

Greenberg Traurig, LLP
Benjamin Gilford
77 West Wacker Drive
Suite 3100
Chicago, IL 60601 United States

**EXHIBIT K**

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## VA 1-971-876

**Effective Date of Registration:**
July 24, 2015

---

## Title _____

**Title of Work:** Wizard

## Completion/Publication _____

**Year of Completion:** 1998
**Date of 1st Publication:** September 01, 1998
**Nation of 1st Publication:** United States

## Author _____

- **Author:** Tommy Ray Cornett
  **Author Created:** 2-D artwork
  **Work made for hire:** No
  **Citizen of:** United States

## Copyright Claimant _____

**Copyright Claimant:** Tommy Ray Cornett
527 S Upper St, Lexington, KY 40508

## Rights and Permissions _____

**Organization Name:** Chosen1, LLC
**Email:** siegler.matt@gmail.com
**Telephone:** (404)824-4343
**Address:** 1735 W. Diversey Pkwy.
#218
Chicago, IL 60614 United States

## Certification _____

**Name:** Benjamin Gilford
**Date:** July 24, 2015
**Applicant's Tracking Number:** 155913.010100-F____

Registration #:  VA0001971876
Service Request #:  1-2580754012



Greenberg Traurig, LLP
Benjamin Gilford
77 West Wacker Drive
Suite 3100
Chicago, IL 60601 United States