UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SOLID OAK SKETCHES, LLC,

        Plaintiff-
        Counterdefendant,

    -v-                                No.  16-CV-724-LTS-SDA

2K GAMES, INC. and TAKE-TWO
INTERACTIVE SOFTWARE, INC.,

        Defendants-
        Counterclaimants.

-------------------------------------------------------x

<u>M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small></u>

        Solid Oak Sketches, LLC ("Solid Oak" or "Plaintiff"), brings this action against Defendants 2K Games, Inc., and Take-Two Interactive Software (collectively, "Take Two" or "Defendants"), asserting a claim of copyright infringement pursuant to the Copyright Act of 1976, 17 U.S.C. § 101 <u>et seq.</u> (the "Copyright Act").  Following this Court's granting of Defendants' motion to dismiss Plaintiff's claims for statutory damages and attorneys' fees on August 2, 2016, Plaintiff filed a Second Amended Complaint ("SAC") on October 24, 2016. (Docket Entry No. 55.)   On August 16, 2016, Defendants filed counterclaims for declaratory judgment pursuant to the Copyright Act and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 ("Defs.' Countercl.").  (Docket Entry No. 47.)  The Court denied Plaintiff's motion to dismiss the counterclaims on May 16, 2017.  (Docket Entry No. 64.)

        The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

        Defendants now move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), requesting an order dismissing Plaintiff's copyright infringement claim

and entry of judgment in Defendants' favor on their counterclaims for declaratory judgments of de minimis use and fair use.  (Docket Entry No. 76.)  The Court has considered carefully the parties' submissions in connection with the motion.  For the following reasons, Defendants' motion is denied.

<u>BACKGROUND</u>

The Court assumes the parties' familiarity with the allegations of the SAC, which have been detailed in prior decisions of the Court, including the August 2, 2016, Memorandum Opinion and Order and the May 16, 2017, Memorandum Order.  (<u>See</u> Docket Entry Nos. 55 and 64.)  The following recitation of relevant facts is derived from the allegations in the SAC and the Defendants' Counterclaims, the well-pleaded factual content of which is taken as true for purposes of this motion.  The following facts are undisputed.

Take-Two is a major developer, publisher, and marketer of interactive entertainment and video games that develops and publishes products through its wholly-owned subsidiaries, 2K and Rockstar Games.  (SAC ¶¶ 17-18.)  Defendants annually release an updated basketball simulation video game that depicts basketball with realistic renderings of different NBA teams, including lifelike depictions of NBA players and their tattoos.  (Defs.' Countercl. ¶¶ 8, 141.)  The game has "many components, including graphics, characters, a fictitious plot, gameplay, music, and graphics."  (<u>Id.</u> ¶ 198.)  Solid Oak owns the copyright registrations for five tattoos that are depicted realistically in the game on NBA players Eric Bledsoe, LeBron James, and Kenyon Martin (the "Tattoos").  (<u>See</u> SAC ¶ 32-36; Defs.' Countercl. ¶¶ 142, 153.)  Plaintiff alleges that Defendants have infringed its copyrights by publicly displaying Plaintiff's copyrighted works in versions 2K14, 2K15, and 2K16 (released in 2013, 2014, and 2015, respectively) of their basketball simulation video game.  (SAC ¶¶ 9-11.)

Defendants have filed counterclaims for a declaratory judgment that its depictions of the disputed tattoos constitute de minimis use (Defs.' Countercl. ¶¶ 197-208) and fair use (id. ¶¶ 209-27). Defendants also seek a declaratory judgment that the copyright registration for Plaintiff's "Lion's Head Tattoo Artwork" is invalid and an order directing cancellation of that registration, though they have not requested the Court enter judgment on that counterclaim in the current motion practice. (Id. ¶¶ 228-35.)

## DISCUSSION

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556(.

"In order to establish a claim of copyright infringement, 'a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's.'" Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2010) (quoting Hamil Am. Inc. v. GFI, 193 F.3d 92, 99 (2d Cir.1999)). The "substantial similarity test" is whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Knitwaves, Inc. v. Lollytogs Ltd.

(Inc.), 71 F.3d 996, 1002 (2d Cir. 1995) (quotation marks omitted) (citing Malden Mills, Inc. v. Regency Mills, Inc., 626 F.2d 1112, 1113 (2d Cir. 1980)).

Determining substantial similarity is "one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations." Peter F. Gaito Architecture, LLC v. Simone Development Corp., 602 F.3d 57, 63 (2d Cir. 2010) (citation omitted). A court may "consider the similarity between [two] works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation[,]" and "[i]f, in making that evaluation, the district court determines that the two works are not substantially similar as a matter of law," a "court can properly conclude that the plaintiff's complaint, together with the works incorporated therein, do not plausibly give rise to an entitlement to relief." Id. at 64 (quotation marks and citation omitted). The Second Circuit has "acknowledge[d] that there can be certain instances of alleged copyright infringement where the question of substantial similarity cannot be addressed without the aid of discovery or expert testimony." Id. at 65 (noting that the trier of fact need not always be "limited by the strictures of its own lay perspective") (internal citations omitted). In such cases, resolution at the pleadings stage would be premature. See id.

*De Minimis* Use

Defendants assert that Plaintiff cannot establish substantial similarity because their use of the Tattoos is de minimis. (See Memorandum of Law in Support of Defendants-Counterclaimants 2K Games, Inc. and Take-Two Interactive Software, Inc.'s Motion for Judgment on the Pleadings ("Defs. Opening Br."), Docket Entry No. 77, at 10-13.) Plaintiff asserts that this is an inappropriate stage of the proceedings at which to consider whether Plaintiff's use of the Tattoos is de minimis and that Defendants have failed to establish that their

use is <u>de minimis</u> as a matter of law.  (<u>See</u> Memorandum of Law in Support of Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings ("Pl. Opp. Br."), Docket Entry No. 88, at 15-19.)

To be substantially similar, the amount copied must be more than <u>de minimis</u>. <u>Castle Rock Entm't, Inc. v. Carol Publ'g Grp, Inc.</u>, 150 F.3d 132, 138 (2d Cir. 1998) (citing <u>Ringgold v. Black Entertainment Television, Inc.</u>, 126 F.3d 70, 75 (2d Cir. 1997)).  Although <u>de minimis</u> may mean in certain copyright contexts "a technical violation of a right so trivial that the law will not impose legal consequences," when factual copying is not in dispute, the <u>de minimis</u> analysis focuses on "whether the admitted copying occurred to an extent sufficient to constitute actionable copying, <u>i.e.</u>, infringement."  <u>See</u> <u>Ringgold</u>, 126 F.3d at 74-75.

The sufficiency threshold has both quantitative and qualitative components: "[t]he qualitative component concerns the copying of expression, rather than ideas, a distinction that often turns on the level of abstraction at which the works are compared" and "[t]he quantitative component generally concerns the amount of the copyrighted work that is copied, a consideration that is especially pertinent to exact copying."  <u>Id.</u> at 75 (citing 4 Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u> §§ 13.03[A][1], [2] (1997)).  The qualitative component of the <u>de minimis</u> inquiry may also consider whether a "qualitative connection" exists between the allegedly infringing work and the copyrighted material.  <u>See</u> <u>Gottlieb Development LLC v. Paramount Pictures Corp.</u>, 590 F. Supp. 2d 625, 633 (S.D.N.Y. 2008).  The quantitative component of a <u>de minimis</u> analysis is "especially pertinent to exact copying," and "concerns the observability of the copied work – the length of time the copied work is observable in the allegedly infringing work and such factors as focus, lighting, camera angles, and prominence."  <u>Ringgold</u>, 126 F.3d at 75.  "[O]bservability of the copyrighted work in the

allegedly infringing work" is fundamental to a determination of whether the "quantitative threshold" of substantial similarity has been crossed.  <u>Sandoval v. New Line Cinema Corp.</u>, 147 F.3d 215, 217 (2d Cir. 1998).

Here, the parties do not dispute that there has been factual copying, as Defendants acknowledge that they "have realistically depicted the Tattoos" in the games.  (Defs.' Countercl. ¶ 142.)  The issue before the court is thus "whether the copying is actionable."  <u>See</u> <u>Ringgold</u>, 126 F.3d at 74-75.

The Court finds that, with respect to the video game at issue, it is not possible to apply the qualitatively-focused "average lay observer" standard, <u>see</u> <u>Knitwaves, Inc.</u>, 71 F.3d at 1002, or to make a quantitative determination, <u>see</u> <u>Ringgold</u>, 126 F.3d at 75, of the observability of Solid Oak's copyrighted Tattoos, as the visibility and prominence of the Tattoos on screen are affected by countless possible game permutations that are dependent on individual players' choices.  A side-by-side visual comparison of the works in question here to determine whether the use of the copyrighted material was <u>de</u> <u>minimis</u> as a matter of law is a wholly different exercise than in prior decisions that Plaintiff and Defendants rely upon in their briefing.

In <u>Ringgold</u>, the Second Circuit considered the unauthorized use of a copyrighted poster depicting a Sunday School picnic held by the Freedom Baptist Church in Atlanta, Georgia in 1909 in an episode of an HBO television series.  126 F.3d at 72.  The court held that the poster had clear thematic relevance to both the story elements of the television series as a whole and to the scene in question, as the sitcom featured a middle-class African-American family living in Baltimore, and the scene centered on a gathering in a church hall.  <u>See</u> <u>id.</u> at 72-73, 77.  The Second Circuit noted that the production staff "evidently thought that the poster was well suited as a set decoration for the African-American church" experience, which weighed against a

finding of de minimis use.  Id. at 77.  In overturning the district court's grant of summary

judgment in favor of the defendants, the Second Circuit observed that the segments in which the

poster was at all visible ranged from 1.86 to 4.16 seconds, with an aggregate duration of 26.75

seconds, in support of its conclusion that the use was not de minimis.  126 F.3d at 73, 76.  In

Gottlieb, the district court found de minimis use at the pleadings stage, and noted that the scene

at issue began 37 minutes into the film and lasted for "only three-and-a-half minutes," with the

allegedly infringed work (the "Silver Slugger" pinball machine) "appear[ing] only for seconds at

a time, always in the background, and always partially obscured" by other elements of the scene.

590 F. Supp. 2d at 630.  Similarly in Sandoval, the Second Circuit upheld a grant of summary

judgment on de minimis grounds, and took note of the precise moment in the film when the

scene with allegedly infringing work began and its duration, as well as the timed appearances of

the works themselves.  147 F.3d at 216.

       The crucial difference between those cases and the instant action is that, whereas

the Second Circuit in Ringgold noted there was agreement between the parties "on the durational

aspects of the copying in dispute," 126 F.3d at 76, any such agreement is entirely absent here.

While Defendants contend that the Tattoos in NBA2K are "observable only fleetingly";

"displayed only briefly"; "a small part of the graphical display" when displayed; "sometimes

obscured by other graphics"; "not displayed prominently"; and "sometimes displayed out of

focus," Plaintiff denies each and every one of these characterizations of the Tattoos.  (Compare

Defs.' Countercl. ¶¶ 202-207 with Pl.'s Ans. to Defs.' Countercl. ¶¶ 202-207.)  Instead, Plaintiff

contends that, if an NBA2K player selects Messrs. James, Martin and Bledsoe in a given game or

series of games, or "employs the broad range of the video game's features to focus, angle the

camera on, or make the subject tattoos more prominent," "the overall observability of the subject

tattoos can be fairly significant." (Pl. Opp. Br. at 18.) Thus, it is difficult to determine whether

the substantial similarity is apparent to the "average lay observer," if <u>what</u> he or she is observing

varies in each iteration of the game. The stopwatch-in-hand observations made in <u>Ringgold</u>,

<u>Gottlieb</u>, and <u>Sandoval</u> are impossible to make in a video game, where what is observable on

screen depends on the choices of each individual user and is highly variable.

At this stage of the proceedings, there is no objective perspective as to how the

Defendants' video game is generally played, or to what extent certain game features can be or

are actually utilized, that would allow this Court to make determinations about the choices and

subsequent observations of the "average lay observer," or about the observability and

prominence of the Tattoos. The Court is thus unable to conclude without the aid of extrinsic

evidence that "no reasonable jury, properly instructed, could find that the two works are

substantially similar." <u>Peter F. Gaito Architecture, LLC</u>, 602 F.3d at 63.

The Defendants' motion as to <u>de minimis</u> use is therefore denied without

prejudice to renewal at a later stage of the proceedings.

<u>Fair Use</u>

Defendants also assert that that any use of the Tattoos in the video games at issue

is fair use. (Def. Opening Br. at 13-25.) Plaintiff argues that (1) the question of fair use "is a

mixed question of law and fact," (2) this is an inappropriate stage of the proceedings for the

Court to consider fair use, and, (3) regardless, an evaluation of the relevant fair use factors

weighs in Plaintiff's favor. (Pl. Opp. Br. at 5-15.)

The Copyright Act provides that

the fair use of a copyrighted work . . . for purposes such as criticism, comment,
news reporting, teaching . . ., scholarship, or research, is not an infringement of

copyright.  In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include –

> (1) the purpose and character of the use, including whether such use is of a commercial nature of is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C.S. §107 (LexisNexis 2011).

"The determination of fair use is a mixed question of fact and law," Swatch Grp. Mgmt. Serv. Ltd. v. Bloomberg L.P., 756 F.3d 73, 83 (2d Cir. 2014), and is an "open-ended and context-sensitive inquiry."  Blanch v. Koons, 467 F.3d 244, 251 (2d Cir. 2006).  Courts undertake a "case-by-case analysis" in fair use litigation, and all the factors "are to be explored, and the results weighted together, in light of the purposes of copyright."  Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577-78 (1994).  Though "[c]ourts most frequently address a proffered fair use defense at summary judgment," the Second Circuit "has acknowledged the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim."  See TCA Television Corp. v. McCollum, 839 F.3d 168, 178 (2d Cir. 2016), cert. denied, 137 S. Ct. 2175 (2017) (citations and quotation marks omitted).  Though "it is possible to resolve the fair use inquiry on a motion to dismiss under certain circumstances," the possibility is "slim" and "there is a dearth of cases granting such a motion."  BWP Media USA, Inc. v. Gossip Cop Media, LLC, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015).  A court in this district recently declined to consider a fair use defense at such an early stage when the fair use of a work could not "be resolved with assurance on a visual comparison of the works alone."  See Hirsch v. CBS Broad. Inc., No. 17-cv-1860-PAE, 2017 WL 3393845, at *7 (S.D.N.Y. Aug. 4, 2017).

The Court finds that, here, for substantially the same reasons discussed above, Defendants' claim of fair use of the Tattoos cannot be resolved at this stage of the proceedings. Because of the difficulties inherent in conducting a side-by-side comparison of the video game and the Tattoos, further evidence must be considered in connection with the fact-intensive question of the applicability of the fair use defense. As the differences between the Tattoos and Defendants' use in the video cannot "be resolved with assurance on a visual comparison of the works alone," see Hirsch, 2017 WL 3393845, at *7, Defendants' fair use of the Tattoos is not "so clearly established on the face of the [SAC] as to support dismissal," see TCA Television Corp., 839 F.3d at 178 (2d Cir. 2016).

The Defendants' motion as to fair use is therefore denied without prejudice to renewal at a later stage of the proceedings.

Request to Enter Judgment on Counterclaims I and II

Take Two has also requested that the Court enter judgment in its favor with respect to Counterclaims I and II, seeking declaratory judgments of de minimis and fair use.

As a Rule 12(c) motion is not a proper vehicle for such affirmative relief and, in any event, factual issues preclude resolution of the issues at this juncture, the Court denies the request without prejudice.

CONCLUSION

For the foregoing reasons, the Defendants' motion for judgment on the pleadings is denied.

This Memorandum Opinion and Order resolves Docket Entry No. 76.

The parties are directed to contact the Chambers of Magistrate Judge Stewart D. Aaron promptly to request a conference to address settlement and any outstanding discovery issues.

SO ORDERED.

Dated: New York, New York
       March 30, 2018

                                        ___/s/ Laura Taylor Swain___
                                        LAURA TAYLOR SWAIN
                                        United States District Judge